UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK RABY,<br><br>             Plaintiff,<br><br>    v.<br><br>ONSRUD CUTTER, LP,<br><br>             Defendant. | CASE NO. C09-0863JLR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>AND<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the court on Plaintiff Mark Raby's motion for partial summary judgment on liability (Dkt. # 14) and on Defendant Onsrud Cutter, LP's ("Onsrud") motion for summary judgment (Dkt. # 15). Having reviewed the motions, as well as all papers filed in support and opposition, and no party having requested oral

argument, the court GRANTS Onsrud's motion for summary judgment (Dkt. # 15) and DENIES Mr. Raby's motion for partial summary judgment (Dkt. # 14).

## II. BACKGROUND

This action arises from Onsrud's termination of Mr. Raby's employment as a salesperson. Mr. Raby worked for Onsrud from April 7, 2008, until his termination on March 10, 2009. (Compl. (Dkt. # 1) ¶ 2.1; Declaration of Leslie Banduch ("Banduch Decl.") (Dkt. # 16) ¶ 3; *see* Declaration of Mark Raby ("Raby Decl.") (DKt. # 14) ¶ 1.)

### A. Employment Agreement

The terms and conditions of Mr. Raby's employment agreement were set out in writing. The parties began negotiating the terms and conditions via email. On March 17, 2008, Leslie Banduch, Onsrud's senior vice president of sales and marketing, emailed Mr. Raby a document labeled "DRAFT" and titled "Mark Raby 2008 Compensation" ("Draft Offer"). (Banduch Decl. ¶ 5 & Ex. C.) The Draft Offer described the position's salary, commission, bonuses, and other general terms and conditions, and included the following language:

| | |
|---|---|
| Base Salary: | $50,000 – paid on a weekly basis |
| Commission (guaranteed for 2008): | $45,000 – paid on a weekly basis |
| Additional Bonus Potential: | If 2008 territory sales increase $400,000 over 2007, a bonus of $5,000 will be paid. An increase of $500,000 earns a bonus of $10,000. Any sales over the $500,000 increase will also earn 3% commission. All sales are net. |

. . .

|   |   |
|---|---|
| 2009 Compensation: | Base salary and commission amounts and structure to remain same for 2009. |

(*Id.*, Ex. C.) Mr. Raby responded, "I accept terms as is," (*id.*), and signed and dated the bottom portion of the Draft Offer, which was otherwise blank and did not include signature lines, (Raby Decl., Ex. A).[1]

After Mr. Raby moved from Michigan to Washington to begin work, Onsrud presented him with a document titled "Offer of Employment – 03/18/08, Mark W Raby" ("Formal Offer"). (Banduch Decl. ¶ 7 & Ex. E.) In general, the terms and conditions of the Formal Offer tracked the terms and conditions of the Draft Offer. The Formal Offer, however, included additional language specifying that Mr. Raby would be an at-will employee: "Employment at Onsrud Cutter is At Will. Employment can be terminated by either party, at any time, and for any reason." (*Id.*, Ex. E.) Joanne Smith, on behalf of Onsrud, signed the Formal Offer on March 18, 2008; Mr. Raby also signed the Formal Offer, but did not date it.[2] (*Id.*)

As part of his orientation, Mr. Raby received a copy of the employee handbook and signed a written acknowledgment that he had read and understood its policies. (Banduch Decl. ¶ 8 & Ex. F.) The written acknowledgement provided:

---

[1] Mr. Raby's email response is dated March 17, 2008, while his signature on the Draft Offer is dated March 19, 2008. (*Compare* Banduch Decl., Ex. C., *with* Raby Decl., Ex. A.)

[2] The record is unclear as to when Mr. Raby signed the Formal Offer. In his declaration, Mr. Raby states that Onsrud presented him with the Formal Offer in April 2008, after he had relocated. (Raby Decl. ¶ 3.)

> Unless expressly prescribed by statute or contract, my employment is "at will". I understand that I have the right to terminate my employment at any time, with or without cause or notice, and that the Company has the same right. I further understand that my status as an "at will" employee may not be changed except in writing and signed by the President of the Company.

(*Id.*, Ex. F.)

**B. Modification**

In January 2009, Onsrud and Mr. Raby modified the compensation structure of the original employment agreement. (Banduch Decl. ¶ 9 & Ex. G; Raby Decl. ¶¶ 2-4 & Exs. B & C.) After Onsrud altered Mr. Raby's pay structure, Mr. Raby emailed Mr. Banduch to ask why. (Raby Decl. ¶ 2.) On January 12, 2009, Mr. Banduch replied:

> From the Offer of Employment signed on 3/18/08 we defined 2008 annual compensation as base salary of $50,000 and commission of $45,000. The commission was guaranteed for 2008. This equates to a total annual salary of $95,000[.]
>
> For 2009 it was stated that base salary and commission amounts and structure to remain the same. Our interpretation of that statement is base and commission amounts for 2008 were $95,000 and will also be $95,000 for 2009. Structure remains the same as it is a base and commission for both years.
>
> The difference from 2008 and 2009 is how we get to $95,000.
>
> What we will do is offer a salary of $72,500 (paid weekly) and commission of $22,500 which totals $95,000.
>
> 60%, or $13,500, of the commission will be guaranteed (paid monthly). Since this is a sales position we do feel we should not guarantee the entire $95,000 as sales compensation plans pay on sales and this is how all our other field sales comp plans are structured. So how do you earn the $9,000 that is not guaranteed?
>
> We will pay .6% commission ($4,500) for all sales up to $750,000 which is $5,800 below what your territory did last year. This amount will be paid monthly once the monthly targets are met. These targets are usually

identified as prior year monthly amounts but you and I can work together to establish these.

You will earn another 4.5% for sales over $750,000 up to $850,000. Meaning if you grow sales by $100,000 you will earn the remaining $4,500. This amount is paid monthly once the monthly quotas are achieved.

In order to provide opportunity for additional income we will pay 5% commission for sales over $850,000 to $1,000,000 and 2.5% for sales over $1,000,000. This commission would be paid monthly once sales reach either the $850,000 or $1,000,000 targets.

(Banduch Decl., Ex. G; Raby Decl., Exs. B & C.) On January 14, 2009, Mr. Banduch sent a follow-up email:

> After talking to Bob he agreed to a compromise. We will guarantee a weekly salary (based on an annual amount of $95K) for the first six months of this year.
>
> Beginning in July we will implement a salary plus commission structure similar to what was outlined below. We can discuss further during our visit the last week of this month.
>
> Please confirm receipt of this message and acknowledge acceptance of these terms and I will have payroll implement the changes.

(Banduch Decl., Ex. G; Raby Decl., Ex. C.) Mr. Raby replied: "I have reviewed this and I accept the terms of your message dated January 14th, 2009." (Banduch Decl., Ex. G; *see* Raby Decl. ¶ 4.)

**C.   Termination of Employment**

On March 10, 2009, Onsrud terminated Mr. Raby's employment as part of a reduction in the size of its workforce. (Banduch Decl. ¶ 10; Raby Decl. ¶ 5 & Ex. D.) Onsrud stopped paying Mr. Raby shortly after his termination. (Raby Decl. ¶ 5.)

### D. Lawsuit

Mr. Raby filed this action in Snohomish County Superior Court, alleging three causes of action: (1) breach of contract, (2) misrepresentation, and (3) failure to pay wages. (Compl. ¶¶ 3.1-5.3.) Onsrud removed the case to this court on the basis of diversity jurisdiction. (Not. of Removal (Dkt. # 1) ¶ 10.) The parties both move for summary judgment.

### III. ANALYSIS

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing there is no material factual dispute and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the nonmoving party must present affirmative evidence to demonstrate specific facts showing that there is a genuine issue for trial. *Galen*, 477 F.3d at 657.

**B. Onsrud's Motion for Summary Judgment**

1. Enforceable Employment Agreement

The court first addresses the question of whether the parties entered into an enforceable employment agreement. This question is easily resolved as the parties agree that they entered into an enforceable contract. First, the parties do not dispute that Mr. Raby accepted the Formal Offer in early April 2008 by his signature, and that this employment agreement is enforceable. Second, the parties also do not dispute that they modified the terms of the employment agreement in January 2009 by email and that this modification is enforceable. Mr. Raby expressly accepted the modified terms on January 14, 2009. (Banduch Decl., Ex. G; *see* Raby Decl. ¶ 4.) Furthermore, the arguments of both parties are predicated on the enforceability of the original and the modified employment agreements. On this record, the court finds that there is no genuine issue of material fact that the parties entered into an enforceable employment agreement in early April 2008 and that they modified the terms of the employment agreement in January 2009. In the course of this order, the court will refer to the unmodified, April 2008 employment agreement as the "original employment agreement" and will refer to the modified, January 2009 employment agreement as the "modified employment agreement."

2. Breach of Contract Claims

In his complaint, Mr. Raby alleges that Onsrud "breached its contract with Plaintiff, both by failing to pay him as agreed upon and by terminating his employment." (Compl. ¶ 3.2.) This cause of action encompasses two theories of liability. First, Mr.

Raby asserts that Onsrud breached the contract by terminating his employment. Second, Mr. Raby asserts that Onsrud breached the contract by failing to pay Mr. Raby $90,500[3] of "guaranteed" compensation for 2009 after his termination. For the reasons discussed below, the court finds that, even viewing the evidence in the light most favorable to Mr. Raby, there exists no genuine issue of material fact on these claims and that Onsrud is entitled to judgment as a matter of law.

In construing a written employment contract, "the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous." *Dice v. City of Montesano*, 128 P.3d 1253, 1257 (Wash. Ct. App. 2006) (quoting *Mayer v. Pierce County Med. Bureau*, 909 P.2d 1323, 1326 (Wash. Ct. App. 1995)). A court may interpret a contract as a matter of law "when '(1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence.'" *Id.* (quoting *Tanner Elec. Corp. v. Puget Sound Power & Light Co.*, 911 P.2d 1301, 1310 (Wash. 1996)). A written employment contract is ambiguous "if its terms are uncertain or they are subject to more than one meaning." *Id.* The mere fact that parties suggest opposing meanings, however, does not render a contract ambiguous, *id.*, and "[a]mbiguity will not be read into a contract where it can be reasonably avoided," *Mayer*, 909 P.2d at 1326.

---

[3] Mr. Raby calculates his total "guaranteed" compensation for 2009 as $90,500. (*See* Raby Mot. (Dkt. # 14) at 9.)

*i. Termination of Employment*

In Washington, as a general matter, "an employment contract, indefinite as to duration, is terminable at will by either the employee or employer." *Thompson v. St. Regis Paper, Co.*, 685 P.2d 1081, 1084 (Wash. 1984); *see Flower v. T.R.A. Indus., Inc.*, 111 P.3d 1192, 1199 (Wash. Ct. App. 2005). Here, the plain language of the original employment agreement clearly and unambiguously establishes that Mr. Raby was an at-will employee. Accordingly, Onsrud was entitled to terminate Mr. Raby's employment at any time. The agreement expressly states: "Employment at Onsrud Cutter is At Will. Employment can be terminated by either party, at any time, and for any reason." (Banduch Decl., Ex. E.) Mr. Raby concedes that this language provides that he was an at-will employee. (Raby Resp. (Dkt. # 17) at 11-12.) He likewise does not dispute that, by signing the written acknowledgement, he understood and acknowledged his status as an at-will employee. (Banduch Decl., Ex. F.)

Mr. Raby argues, however, that the January 2009 modification abrogated his status as an at-will employee because the emails between the parties make no reference to at-will employment. (Raby Resp. at 12-13.) This argument is unpersuasive. The modification does not purport to change Mr. Raby's employment to employment for a fixed term. By its plain terms, the modification affected only the terms of the compensation structure. Notably, the modification does not address a range of terms specified in the original employment agreement, including not only the at-will provision, but also provisions relating to medical and dental benefits, vacation policy, and life insurance, among others. These terms, like the at-will provision, do not drop out of the

agreement merely because the parties did not reiterate them. Furthermore, the absence of language regarding an employee's at-will status does not, without more, transform him or her into an employee for a fixed term because the default in Washington is at-will employment. *Havens v. C&D Plastics, Inc.*, 876 P.2d 435, 444 (Wash. 1994). The court finds that the modification did not alter Mr. Raby's status as an at-will employee.

In sum, viewing the evidence in the light most favorable to Mr. Raby, the court finds that there is no genuine issue of fact that Mr. Raby was an at-will employee and that Onsrud was entitled to terminate his employment at any time. The court grants summary judgment in favor of Onsrud.

    *ii.    Failure to Pay "Guaranteed" Compensation*

Mr. Raby next argues that, even if Onsrud was entitled to terminate his employment, Onsrud was nevertheless obligated to continue paying Mr. Raby $90,500 of "guaranteed" pay. (Raby Resp. at 7.) In support of this argument, Mr. Raby points to language in the modified employment agreement referring to "guaranteed" compensation and to durational language, which specifies compensation "for 2009" and "for the first six months of this year." (*See* Banduch Decl., Ex. G; Raby Decl., Exs. B & C.)

Construing the modified employment agreement as a whole, the court rejects Mr. Raby's argument that he was entitled to payment of the "guaranteed" compensation after his termination. As a preliminary matter, the court finds that the modified employment agreement is clear and unambiguous on this issue. The court next finds that the contract language referring to "guaranteed" compensation merely distinguished between different types of compensation. Specifically, the language of the January 12, 2009 email

distinguishes between (1) salary; (2) guaranteed or non-performance-dependent commission; and (3) non-guaranteed or performance-dependent commission.[4] Similarly, the language of the January 14, 2009 email, which provides that Onsrud "will guarantee a weekly salary (based on an annual amount of $95K) for the first six months of this year," merely distinguishes between the compensation structure for the first six months and the second six months of 2009. Though portions of Mr. Raby's compensation were "guaranteed" in the sense that they were not performance-dependent, these portions of his compensation were not guaranteed independently of Mr. Raby's employment with Onsrud. This construction harmonizes the reference to "guaranteed" compensation with the overall compensation structure and with the at-will employment provision.

The modified employment agreement's use of durational language does not mandate a different result. Mr. Raby emphasizes the durational language—namely, "for the first six months of this year" and "for 2009"—in support of his argument that the agreement guaranteed him $90,500 in compensation for 2009. Again, construing the modified employment agreement as a whole, it is plain that the contract uses this durational language to explain the basis for the overall yearly compensation structure, which was based on a combined salary and commission total of $95,000 for 2009, and to distinguish between the compensation structure for the first six months of 2009 and the for the final six months. *Cf. Lasser v. Grunbaum Bros. Furniture Co.*, 281 P.2d 832,

---

[4] The same distinction between salary and guaranteed commission applies to the language in the original employment agreement, although it does not address non-guaranteed commission.

833-34 (Wash. 1955). Absent additional contract language or relevant facts, this durational language does not establish either a fixed term of employment or a fixed term of compensation.

The court is likewise not persuaded to abandon Washington law in favor of the Illinois case law cited by Mr. Raby. Sitting in diversity, the court applies Washington law. The Illinois case law presented by Mr. Raby, though it addresses similar issues, is not binding on this court, and the court declines to follow it.

The court finally notes that Mr. Raby's proposed construction would violate the tenet of Washington law that courts must adopt a reasonable construction of a contract over an unreasonable one. "Where one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail." *Byrne v. Ackerlund*, 739 P.2d 1138, 1143 (Wash. 1987). Under Mr. Raby's proposed construction, he would have been entitled to terminate his employment with Onsrud at any time under the at-will provision while continuing to receive "guaranteed" compensation. This construction would render the contract unreasonable, and the court need not adopt it in the face of a reasonable construction supported by the plain language of the modified employment agreement.

In sum, viewing the evidence in the light most favorable to Mr. Raby, the court finds that there is no genuine issue of material fact with respect to whether Mr. Raby was entitled to continue receiving "guaranteed" compensation for 2009 after his termination. Therefore, the court grants summary judgment in favor of Onsrud.

3. <u>Misrepresentation Claims</u>

In his second cause of action, Mr. Raby alleges that Onrud "intentionally or negligently misrepresented the conditions of [Mr. Raby's] employment, causing [Mr. Raby] to suffer damages in an amount to be proven at trial." (Compl. ¶ 4.2.) For the reasons discussed below, viewing the evidence in the light most favorable to Mr. Raby, the court finds that there is no genuine issue of material fact regarding Mr. Raby's misrepresentation claims and that Onrud is entitled to judgment as a matter of law.

   *i. Negligent Misrepresentation*

The Washington Supreme Court has adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Lawyers Title Ins. Corp. v. Baik*, 55 P.3d 619, 623 (Wash. 2002) (quoting *ESCA Corp. v. KPMG Peat Marwick*, 959 P.2d 651, 654 (Wash. 1998) (quoting Restatement (Second) of Torts § 552(1))). "[T]o prevail on a claim of negligent misrepresentation, a plaintiff must prove by clear, cogent, and convincing evidence that he or she justifiably relied on the information that the defendant negligently supplied." *Id*.

Mr. Raby explains that his misrepresentation claim is based on Onrud's allegedly false guarantee of pay for a term. (Raby Resp. at 15.) He states that he relocated himself and his family from Michigan to Washington in reliance on Onrud's alleged guarantee

ORDER- 13

of employment for a fixed term under the terms of the Draft Offer only to be presented with a new, at-will employment agreement upon his arrival. He asserts: "It seemed Onsrud had intentionally left the at-will language out of the draft agreement in order to induce me to relocate." (Raby Decl. ¶ 3.)

Mr. Raby's negligent misrepresentation claim fails because he has not shown either a false representation of fact by Onsrud or justifiable reliance on his part. First, Mr. Raby has not pointed to any false representation of fact by Onsrud. Viewing the evidence in the light most favorable to Mr. Raby, the court will assume that Mr. Raby understood the language of the Draft Offer to guarantee him employment and compensation for a two-year term and believed that he had entered into an enforceable agreement by signing the Draft Offer. Nevertheless, even were the Draft Offer enforceable, Mr. Raby's subjective misunderstanding as to the legal effects of the Draft Offer does not constitute an actual misrepresentation of fact by Onsrud. Washington law is clear that the absence of an at-will provision does not alter the general rule that employment is at will, not for a fixed term. *Havens*, 876 P.2d at 444. Though Mr. Raby may have misunderstood Washington law on this point, it does not follow that Onsrud thereby made a false representation of fact. As the Washington Supreme Court teaches, "[m]erely not discussing the downsides of various terms of employment in employment negotiations will not create a cause of action for negligent misrepresentation." *Trimble v. Wash. State Univ.*, 993 P.2d 259, 264 (Wash. 2000). Mr. Raby points to no evidence to give rise to a genuine issue of material fact regarding whether Onsrud made a false representation of fact.

Second, Mr. Raby's assertion that his reliance was justified because he signed the Draft Offer does not survive scrutiny. He contends that his "reliance on Onsrud's guarantee was justifiable, because he had already accepted the original agreement." (Raby Resp. at 16.) "Justifiable reliance means that the 'reliance was reasonable under the surrounding circumstances.'" *Shah v. Allstate Ins. Co.*, 121 P.3d 1204, 1209 (Wash. Ct. App. 2005) (quoting *Baik*, 55 P.3d at 624). Setting aside the question whether Mr. Raby's decision to sign a document labeled "DRAFT" can be deemed reasonable, the court finds that, even were the Draft Offer enforceable, Mr. Raby's subjective misunderstanding about the Draft Offer's legal effects is insufficient to establish a genuine issue of material fact as to justifiable reliance. Without more, a party's reliance on his or her subjective misunderstanding of Washington law does not rise to the level of justifiable reliance. Mr. Raby points to no facts beyond his own misunderstanding to suggest the existence of a genuine issue of material fact. Ultimately, Mr. Raby's reliance, though perhaps genuine, was not justified. The court finds that there is no genuine issue of material fact as to whether Mr. Raby's reliance was justifiable.

In sum, viewing the evidence in the light most favorable to Mr. Raby, the court finds that Onsrud is entitled to summary judgment on Mr. Raby's negligent misrepresentation claim.

    *ii.    Intentional Misrepresentation*

Mr. Raby's intentional misrepresentation claim fails for the same reasons as his negligent misrepresentation claim. In Washington, to avoid summary judgment on an intentional misrepresentation claim, the plaintiff must make a prima facie showing of

nine elements: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996); *see W. Coast, Inc. v. Snohomish County*, 48 P.3d 997, 1000 (Wash. Ct. App. 2002). As discussed above, Mr. Raby has not shown that a genuine issue of material fact exists regarding a false representation of fact by Onsrud or justifiable reliance on his part. Therefore, viewing the evidence in the light most favorable to Mr. Raby, the court finds that Onsrud is entitled to summary judgment on Mr. Raby's intentional misrepresentation claim.

    4.    <u>Failure to Pay Wages Claim</u>

In his third and final cause of action, Mr. Raby alleges that Onsrud failed to pay wages owed to him in violation of RCW Chapters 49.48 and 49.52. (Compl. ¶¶ 5.1-5.3.)

    *i.*    *RCW Chapter 49.48*

"Under RCW 49.48.010, an employer must pay an employee who was discharged or quit at the end of the regularly established pay period." *Flower*, 111 P.3d at 1203. Failure to pay is a misdemeanor, and an employee who obtains a judgment for a violation of RCW 49.48.010 is entitled to reasonable attorney's fees under RCW 49.48.030. *Id.* Here, Mr. Raby's claim under RCW Chapter 49.48 is derivative of his breach of contract claims. As discussed above, Onsrud was not required to continue paying Mr. Raby "guaranteed" compensation after his termination. Therefore, the court finds that Mr.

Raby has not shown a genuine issue of material fact with respect to his claim under RCW Chapter 49.48 and that Onsrud is entitled to judgment as a matter of law.

   ii.   RCW Chapter 49.52

Pursuant to RCW Chapter 49.52, the Washington Legislature "established a remedy of exemplary damages if an employer willfully refuses to pay wages." *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371, 374 (Wash. 1998). The critical determination in a case under RCW 49.52.070 is whether the employer's failure to pay wages was "willful." *Schilling*, 961 P.2d at 375. The test is not a stringent one: "The nonpayment of wages is willful when it is the result of a knowing and intentional action and not the result of a bona fide dispute." *Lillig v. Becton-Dickinson*, 717 P.2d 1371, 1375 (Wash. 1986); *see Duncan v. Alaska USA Fed. Credit Union, Inc.*, 199 P.3d 991, 1004 (Wash. Ct. App. 2008). An employer's genuine belief that he or she is not obligated to pay certain wages precludes the withholding of those wages from falling within the scope of RCW 49.52.070. *Duncan*, 199 P.3d at 1004. The question of willfulness, though ordinarily a question of fact, may be decided by the court on a motion for summary judgment where there is no dispute as to the material facts and reasonable minds could reach but one conclusion from those facts. *Schilling*, 961 P.2d at 375; *Duncan*, 199 P.3d at 1004.

Here, Mr. Raby's wage claim fails because Onsrud did not willfully deprive Mr. Raby's of any part of his wages. Just as Mr. Raby's breach of contract claims were predicated on an incorrect construction of the employment agreement, so too does his wage claim rest on the faulty premise that the terms of the modified employment agreement required Onsrud to continue paying him "guaranteed" pay after his

termination. Viewing the evidence in the light most favorable to Mr. Raby, the court finds that there is no genuine issue of material fact regarding Mr. Raby's wage claim because Onsrud was not obligated to continue paying Mr. Raby "guaranteed" compensation. Onsrud is thus entitled to summary judgment on Mr. Raby's wage claim.

**C. Mr. Raby's Partial Motion for Summary Judgment**

Having granted summary judgment in favor of Onsrud, the court denies Mr. Raby's motion for partial summary judgment (Dkt. # 14).

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS Onsrud's motion for summary judgment (Dkt. # 15) and DISMISSES all of Mr. Raby's causes of action. The court DENIES Mr. Raby's motion for partial summary judgment (Dkt. # 14).

Dated this 17th day of December, 2009.

JAMES L. ROBART
United States District Judge